**Henry M. LOPEZ, Plaintiff–Appellant,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant–Appellee.**

**No. 1072, Docket 89–7962.**

United States Court of Appeals, Second Circuit.

Argued March 28, 1990.

Decided April 4, 1991.

---

Leon R. Koziol, Utica, N.Y., of counsel, for plaintiff-appellant.

Donald P. McCarthy (Alan J. Pierce, Hancock & Estabrook, Syracuse, N.Y., of counsel), for defendant-appellee.

Before OAKES, Chief Judge, WINTER, Circuit Judge, and MUKASEY,[1] District Judge.

MUKASEY, District Judge:

This appeal arises from the February 6, 1987 discharge from employment of plaintiff-appellant Henry M. Lopez at the end of his 26-week probationary period as a sales representative with defendant-appellee Metropolitan Life Insurance Company ("Met–Life"). Before he started work as a probationary employee, appellant entered into a Temporary Special Agency Agreement with Met–Life which required that he place policies generating a cumulative net total of $4,095 in first-year commissions during this 26-week period in order to "validate" his employment contract. Met–Life contends, and the district court found, after a four-day bench trial, that appellant was discharged for failure to meet this production quota. The appellant, who is black and of Jamaican descent, does not dispute that he failed to meet the production quota, but rather contends here as he did below that he could not meet it because Met–Life discriminated against him on the basis of his race and national origin in violation of Title VII by failing to train him and by otherwise depriving him of opportunities afforded white employees to pursue the production quota. The district court found the evidence insufficient to support this claim. We affirm.

I.

In his Complaint, appellant alleged four causes of action arising out of his discharge: first, that he was discriminated against with respect to on-the-job training and denied "equal opportunities for customer referrals, assignment, and promotion" within the Utica branch; second, that Met–Life engaged in discriminatory office practices "by referring new customers and calls to white employees while denying the same to plaintiff (and other black employees) ... and [by directing office personnel] to withhold essential cooperation in the employment place to plaintiff and others similarly situated ... while encouraging cooperation with white sales managers and personnel"; third, that Met–Life engaged in discriminatory promotion practices; and fourth, that he had been subjected to "unfounded complaints and/or innuendos" relating to his race and dialect.

At the end of appellant's case-in-chief, the district court dismissed for lack of standing the third claim that Met–Life discriminated in promotion. After the trial and post-trial briefing by both parties, Judge McAvoy wrote a Memorandum–Opinion and Order dated September 20, 1989 dismissing appellant's claims in their entirety.

■■■ Judge McAvoy properly dismissed appellant's disparate impact claim, stating that appellant's "attempt to present this case as one sounding in disparate impact betrays a profound misunderstanding of Title VII law." *Memorandum–Opinion,* at 13, 1989 WL 110849. To establish a prima facie disparate impact case, a plaintiff must show that a facially neutral employment practice has a significantly discriminatory impact. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). It is not enough to show, at the bottom line, that there is a racial imbalance in the work force. *Ward's Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). For this reason, appellant's statistical proof, a box of af-

---

1. The Honorable Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

firmative action reports which together allegedly show a void of black employees in the regional offices of Met–Life in the years 1982 to 1988, is fundamentally inadequate. Appellant did not show that Met–Life's on-the-job training practices bear any causal relationship to the dearth of black employees in the regional offices of Met–Life. "The causal requirement [of Title VII] recognizes that underrepresentation of blacks might result from any number of factors, and it places an initial burden on the plaintiff to show that the specific factor challenged under the disparate impact model results in the discriminatory impact." *Carroll v. Sears, Roebuck & Co.*, 708 F.2d 183, 189–90 (5th Cir.1983); *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 108 S.Ct. 2777, 2990, 101 L.Ed.2d 827 (1988). The evidence at trial showed that there are reasons other than alleged inadequate training why minorities might not be employed at Met–Life. In fact, at least three black employees at the Utica office had successfully "validated" their contracts and worked at the office for at least two years. Two of those employees were no longer employed at Met–Life because they had voluntarily resigned.

The trial judge dismissed appellant's hostile work environment claims, finding that appellant had not shown "the requisite pervasiveness of harassment or hostility" to maintain a hostile working environment claim under Title VII. *Memorandum–Opinion*, at 11, 1989 WL 110849. That ruling is not at issue on appeal.

■ The only remaining claims are appellant's disparate treatment claims. The trial court dismissed appellant's pattern or practice disparate treatment claim, finding that the evidence showed that at least two of three other black employees had validated their contracts, had been with the Utica office for between two and three years and had resigned of their own volition, a ruling appellant does not appear to challenge here. In any event, to make out a pattern or practice case, a plaintiff must show systematic disparate treatment—that is, that intentional racial discrimination is the standard operating procedure of the defendant, not merely that there have been isolated, sporadic acts of disparate treatment. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977). The pattern or practice claim would fail in this case for the same reason that the disparate impact claim failed—the inadequacy of the statistical evidence, standing alone as it did, in contrast to the specific evidence offered by defendant of black employees who had validated their contracts.

The focus of appellant's argument remains the trial court's dismissal of his individualized disparate treatment claims. In essence, appellant contends that the trial judge misapplied *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Appellant's other arguments are addressed to the district court's assessment of the evidence.

## II.

■ Unless the district court's findings of fact are clearly erroneous, this Court is bound by them. *Berl v. County of Westchester*, 849 F.2d 712, 715 (2d Cir.1988). In deciding whether those findings are clearly erroneous, we must give considerable deference to the trial court's ability to assess the credibility of the witnesses. *Puritan Ins. Co. v. Eagle Steamship Co., S.A.*, 779 F.2d 866, 871 (2d Cir.1985). Conclusions of law are freely reviewable. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961).

Appellant contends that the district court effectively repealed Title VII by misapplying *McDonnell Douglas*, specifically by finding that appellant failed to establish a *prima facie* case of disparate treatment as to his on-the-job training claim and by failing to find that plaintiff made a sufficient showing on pretext with regard to his claim that Met–Life engaged in discriminatory office practices. We disagree.

■ In Title VII actions, the plaintiff bears the burden of initially proving a *prima facie* case. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248,

252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). To establish a *prima facie* case of individualized disparate treatment, appellant had to show: (1) that he is a member of a protected class; (2) that he satisfactorily performed the duties required in his position; (3) that Met–Life had a policy of providing on-the-job training to its probationary sales representatives; and (4) that appellant was not provided this training under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas, supra; Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991); *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Once a plaintiff has made out a *prima facie* case of individualized disparate treatment, the defendant then has a burden to articulate a legitimate, nondiscriminatory business reason for the actions alleged to be discriminatory. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. When the defendant has met this burden of production with sufficient specificity, the burden returns to the plaintiff, who ultimately must establish by a preponderance of the evidence that the nondiscriminatory reasons proffered by the defendant are a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. To show that the proffered reasons are a pretext, a plaintiff need not directly prove discriminatory intent. It is enough for the plaintiff to show that the articulated reasons were not the true reasons for the defendant's actions. *Id.* at 256, 101 S.Ct. at 1095. Regardless of how these burdens are described, however, the plaintiff retains the burden of persuading the fact finder. *Id.* at 253, 101 S.Ct. at 1093.

The district court found that appellant had not met his initial burden in that he had not shown that other sales representatives received training opportunities that appellant was denied. *Memoran-*

*dum–Opinion*, at 19, 1989 WL 849. Appellant contends that the trial court required too much—that he should not have been required to prove that similarly situated white employees were treated differently—in essence, that the *McDonnell Douglas* requirements do not represent the sole means by which a plaintiff can establish a *prima facie* case of individualized disparate treatment.

It is undoubtedly true that a plaintiff can establish a *prima facie* case of individualized disparate treatment through other than a showing under the formula laid out in *McDonnell Douglas. See Grant v. Bethlehem Steel Corp.*, 635 F.2d 1007, 1014 (2d Cir.1980), *cert. denied*, 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981). Nevertheless, a Title VII plaintiff initially must bear the burden of "offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *International Brotherhood of Teamsters*, 431 U.S. at 358, 97 S.Ct. at 1866. Appellant offered no evidence adequate to support such an inference. The district court found, based on the testimony at trial, including that of a white probationary sales representative hired after appellant was terminated, that the training or assistance afforded probationary sales representatives was very informal: unless the employee asked for help, the employee did not receive it. *Memorandum–Opinion*, at 19, 1989 WL 110849. This description of Met–Life's training policy, which is based on credible evidence, aptly fits the training afforded appellant according to his own testimony. Absent evidence which creates an inference of discriminatory treatment, we cannot fault the trial judge's finding that appellant failed to establish a *prima facie* case of individualized disparate treatment.[2]

Having found that appellant did not meet his initial burden of producing sufficient

---

**2.** As discussed earlier, appellant's proffered statistical proof fails to create an inference that Met–Life's training policies are discriminatory. The alleged absence of a pre-licensing training log in his employee file also fails to create an inference of discrimination. Appellant's super-

visor during his pre-licensing training, Dominick Alexander, testified that he kept such a log on appellant. In addition, appellant has no complaints about the training he received while under the tutelage of Alexander.

evidence to establish a *prima facie* case, the trial judge was under no obligation to proceed further in the *McDonnell Douglas* analysis. Accordingly, it cannot be error for the trial judge not to have analyzed the issue of pretext as to the training claim.

█ The only ruling that gives us pause on this appeal is the district court's finding as to pretext with regard to appellant's claim that Met–Life engaged in discriminatory office practices by referring new customer calls to white employees rather than to appellant. Judge McAvoy found that Met–Life satisfactorily articulated a legitimate business explanation for the fact that in one instance a call for life insurance information was routed to a white employee rather than to appellant—that unsolicited requests for life and health insurance information were routed to sales representatives based on competency needed to deal with the particular request. He then found that appellant produced no evidence which tended to establish that Met–Life's business justification was merely a pretext.

Appellant contends that the district court erred in not considering Hamilton's testimony as evidence of pretext. He points to no particular segment of that testimony, but after reading Hamilton's testimony in its entirety, as presented in the Joint Appendix, we must presume that appellant is referring to the testimony that Hamilton and appellant heard one of the office staff telling a prospective client seeking information regarding car insurance that no one was available to answer questions, rather than referring the call to appellant (who was not licensed to sell car insurance) or Hamilton, who testified that he was. Instead, a message was taken and subsequently referred to a white sales representative, Becker, who allegedly had been at Met–Life for a shorter time than Hamilton. (Tr. at 104–05) Hamilton's testimony showed that he was qualified to answer questions about car insurance, and that he had been employed at Met–Life longer than Becker.

Even assuming that the trial judge credited this testimony, there is no evidence on the record to show either that the person who took the call knew that Hamilton was qualified to deal with car insurance, or that relative competence is determined by seniority. Notably, neither side summoned the person who allegedly took that call as a witness. In the absence of such evidence, and given the deference necessarily afforded a trial judge's findings of fact on appeal, we cannot find that the trial judge clearly erred in finding that this testimony did not constitute evidence of pretext.

### III.

Appellant contends that the district court clearly erred in failing to take into account the allegedly discriminatory manner of his discharge. Appellant is not claiming here that he was discharged for discriminatory reasons,[3] but rather that the manner in which he was discharged is evidence of the discriminatory treatment afforded blacks in the Utica office of Met–Life. According to appellant, the office manager, John Cerio, told Hamilton, at Hamilton's desk and in the presence of other employees, that both appellant and Hamilton were fired for lack of productivity and, in Hamilton's case, for failure to renew his master's license. A white employee, Scott Bohling, was not terminated from employment in the same public and humiliating manner in which appellant and Hamilton were terminated. (Tr. at 93–96, 100) Cerio denied that Hamilton was discharged in the presence of other Met–Life employees. (Tr. at 464–65) Neither party called anyone who witnessed the conversation between Cerio and Hamilton.

Appellant has not shown that the district court's finding is clearly erroneous. To prove that the manner of his discharge is direct evidence of discrimination, appellant relies on the testimony of Hamilton that the conversation between Cerio and Hamilton was heated and occurred in the presence of other employees. Judge McAvoy made no such findings. This Court cannot find on appeal that the trial court clearly

---

**3.** Appellant does not claim to have met his production quota (although he does claim that had he been properly credited with all of his sales, he would have come close to meeting it), nor does he point to any evidence which suggests that any probationary employees who failed to meet their production quota were not discharged at the end of their probationary term.

erred, particularly where these factual determinations depend solely on the credibility of the witnesses.

Neither can we find that the trial judge's ultimate conclusion, that the manner of appellant's discharge was not evidence of discrimination, was erroneous based on the factual findings he did make. As the district court noted, whether the office is well run is not pertinent, in the absence of discriminatory intent, to deciding whether appellant has been a victim of racial discrimination.

We have examined appellant's other arguments, including those relating to the trial court's evidentiary rulings, and find them to be without merit.

### CONCLUSION

The judgment of the district court is affirmed.