**William C. McLEE, Plaintiff,**

v.

**The CHRYSLER CORPORATION, Defendant.**

**No. 93 CV 3334 (JSR).**

United States District Court, S.D. New York.

May 29, 1996.

Michael H. Sussman by Stephen Bergstein, Goshen, NY, for Plaintiff.

James McGovern, Stroock & Stroock, New York City, for Defendant.

## MEMORANDUM OPINION
## AND ORDER

RAKOFF, District Judge.

For a matter so lacking in merit, this case has consumed an inordinate amount of time and resources.

In February, 1992, plaintiff McLee was hired for the position of probationary night stock supervisor at Chrysler Corporation's Tappan Parts Depot. After four-and-a-half months of increasingly substandard performance, he was terminated. In May, 1993, he brought suit in federal court, alleging that his termination and certain of the conditions of his employment were infected with racial discrimination.

Following completion of discovery, Chrysler moved for summary judgment before the Hon. Gerard L. Goettel, to whom the case was originally assigned. In June, 1994, Judge Goettel issued a memorandum decision that interpreted *Gallo v. Prudential Residential Services, Ltd. Partnership*, 22 F.3d 1219 (2d Cir.1994) to require him to "decline to even consider whether summary judgment is appropriate in this case." *McLee v. Chrysler Corporation*, 1994 WL 673513, *4 (S.D.N.Y.1994). In October, 1994, the Court of Appeals, finding this interpretation "unsupportable," issued a writ of mandamus directing the reassignment of the case to another judge, who could "exercise [the] decision-making authority entrusted to him." *McLee v. Chrysler Corporation*, 38 F.3d 67, 68 (2d Cir.1994). In November, 1994, the case was reassigned to the Hon. Barrington D. Parker, Jr., and thereafter, on March 1, 1996, to this Court. On March 29, 1996, the Court conducted a hearing on defendant's renewed motion for summary judgment.

For the reasons set forth below, the motion is hereby granted.

The Complaint alleges that McLee, an African American, received less pay, training, and sick leave benefits than similarly situated Caucasians employed by Chrysler, and that when McLee complained to Chrysler and others, Chrysler retaliated by terminating him on pretextual grounds. These actions, according to the Complaint, constitute a violation of 42 U.S.C. §§ 1981 *et seq.* and 42 U.S.C. §§ 2000e–2 *et seq.* (the Civil Rights Acts of 1866 and 1964 respectively), entitling plaintiff to damages and equitable relief.

Despite full discovery, however, plaintiff has failed to adduce evidence sufficient to make the minimal *prima facie* showing of discrimination necessary to survive a motion for summary judgment. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995); *Chambers v. TRM Copy Centers Co.*, 43 F.3d 29, 37 (2d Cir.1994); *Woroski v. Nashua Corp.*, 31 F.3d 105, 108 (2d Cir.1994).

■ As to pay, McLee's claim of discrimination reduces to the allegation that a single Caucasian supervisor, Douglas Lockwood, was paid at a higher rate than McLee (*see* Deposition of William McLee at 357–359; Affidavit of Robert S. Broderdorf at ¶¶ 25–26). But McLee has failed to come forward with any evidence suggesting that this differential can be attributed even inferentially to discrimination. Whereas Chrysler has produced substantial evidence that Lockwood was paid more than McLee because of his materially different duties, greater experience, and somewhat longer tenure at Chrysler (*see, e.g.,* Affidavit of Stephen C. Dahlman at ¶¶ 15, 20–24; Broderdorf Aff. at ¶¶ 23–26), and that a similarly situated Caucasian supervisor was paid at a lower rate than McLee (Broderdorf Aff. at ¶ 27), McLee has not only produced no evidence to the contrary but has admitted at his deposition that he had been told by Lockwood that the latter was being paid more because of his prior work experience at Chrysler (McLee Dep. at 358–359). Accordingly, this claim cannot survive summary judgment. *See, e.g., Kureshy v. City University of New York*, 561 F.Supp. 1098 (E.D.N.Y.1983).

■ As to training, McLee concedes that Chrysler's general policy is to provide on-the-job training tailored to the particulars of the job. (Chrysler's 3(g) Statement at ¶ 7; McLee's Counter 3(g) Statement at ¶ 7). Thus, his allegation that the training given certain Caucasian supervisors was different from his own does not by itself give rise to any inference of discrimination. *See, Lopez v. Metropolitan Life Insurance Co.*, 1989 WL

110849 (N.D.N.Y.1989), *aff'd,* 930 F.2d 157 (2d Cir.1991). Moreover, as his counsel indicated at oral argument (Transcript of oral argument, March 29, 1996, at 13–18), virtually all of McLee's "evidence" of "discrimination" in training (like much of his "evidence" generally) consists of inadmissible hearsay that cannot serve to meet his burden on a summary judgment motion. *Burlington Coat Factory Warehouse Corporation v. Esprit De Corp.,* 769 F.2d 919, 924 (2d Cir. 1985); *Caldwell v. The American Basketball Association, Inc.,* 825 F.Supp. 558, 571–572 (S.D.N.Y.1993). As against this, Chrysler has produced substantial evidence that the training given McLee and the other supervisors was in each case equally tailored to their specific responsibilities (*see, e.g.,* Broderdorf Aff. at ¶¶ 6–13; Dahlman Aff. at ¶¶ 13–24); and McLee has produced no evidence to the contrary.

As to sick leave benefits, McLee is once again unable to adduce any admissible evidence that Chrysler's Caucasian employees obtained better sick leave treatment than he did; and Chrysler's evidence to the contrary is undisputed. (Def.Dep.Ex. 32; McLee Dep. at 178–179, 241).

■ Thus shorn of its unsupported allegations of on-the-job discrimination, McLee's claim reduces to an allegation of discriminatory termination. But while McLee's submissions accordingly focus much of their argument on this claim, here again McLee fails to make the minimal *prima facie* showing necessary to survive a motion for summary judgment. In particular, he utterly fails to show that he performed his job in a satisfactory manner, an essential threshold predicate to any claim of discriminatory discharge. *Lopez v. Metropolitan Life Insurance Co.,* 930 F.2d 157, 161 (2d Cir.1991); *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985).

McLee appears to believe that he has met his burden in this respect by showing that the company's 30–day written evaluation (Def.Dep.Ex. 10) rated his job performance as satisfactory; whereas its 120–day evaluation (Def.Dep.Ex. 25), which rated his performance as unsatisfactory (and served as part of the basis for his termination), was allegedly prepared only after he had complained to his supervisors about Chrysler's alleged discrimination (*see* Plaintiff's Memorandum of Law at 4). But quite aside from the undisputed evidence that Chrysler did not learn of McLee's complaints of racial discrimination until well after McLee's supervisors had informed him of his performance problems (*see, e.g.,* McLee Dep. at 159–161, 215–216; Def.Dep.Ex. 8, 9, 17; Dahlman Aff. at ¶ 10), and that McLee voluntarily withdrew the only claim of discrimination he made directly to his supervisors (Def.Dep.Ex. 18), plaintiff simply ignores the undisputed and, indeed, overwhelming evidence that his performance had become patently unsatisfactory long before he made any complaint of discrimination to anyone (*see, e.g.,* Affidavit of James Garden at ¶¶ 11–15).

For example, confronted with both documentary and testimonial evidence that he was repeatedly late for work and was warned about his excessive tardiness by his supervisors (*see, e.g.,* Def.Dep.Ex. 8, 9, 17, 18, 25, 28; Broderdorf Aff. at ¶ 9; Garden Aff. at ¶¶ 11, 12, 15; Dahlman Aff. at ¶¶ 10–12), McLee admitted at his deposition to being late on a number of occasions (McLee Dep. at 159, 160, 316) and to being warned by his supervisors more than once that such tardiness was unsatisfactory on the part of a supervisory employee (McLee Dep. at 159–161, 320). Yet it was only after being warned about this and other serious inadequacies in his performance that McLee, for the first time, suggested that one of his supervisors, Jeffrey Haas, had a problem with minorities—an allegation he subsequently withdrew after admitting it was made only because of his anger over the criticism of his job performance (*see, e.g.,* McLee Dep. at 196–200, 218–19; Def.Dep.Ex. 18, 28; Garden Aff. at ¶¶ 12, 14. Broderdorf Aff. at ¶ 8). His further response to repeated warnings of inadequacy was to absent himself entirely from work for two days on the basis of a blister on his foot, despite being advised in writing by his doctor, following an examination, that he need only take one day off (Def.Dep.Ex. 20, 30; Broderdorf Aff. at ¶ 18). It was only after this last incident that Chrysler finally terminated him (Def.Dep.Ex. 30).

In addition to chronic tardiness, McLee's 120–day evaluation listed eleven other areas of unsatisfactory performance (out of a total of 23 areas), including, *inter alia,* failing to complete assignments on time, failing to complete projects at an acceptable level, failing properly to supervise employees, and failing to solve operational problems. When given the opportunity to contest the twelve particular respects in which his evaluations were below the satisfactory level, McLee chose to contest only six of the twelve. (Def.Dep.Ex. 25; Broderdorf Aff. at ¶ 14; McLee Dep. at 315–316). In addition, he chose not to contest his overall performance rating of "Below Requirements" (Def.Dep.Ex. 25; Broderdorf Aff. at ¶ 14; Garden Aff. at ¶ 20). When asked about this at his deposition, he admitted that he had only contested the evaluations that he thought were unfair (McLee Dep. at 316).

■ Thus, by McLee's own repeated admission, his job performance was unsatisfactory both in numerous particulars and overall. While the *prima facie* showing required of a plaintiff in an employment discrimination lawsuit is a very modest one, Chrysler's undisputed evidence of plaintiff's substandard job performance, confirmed by plaintiff's own admissions, preclude his carrying even so minimal a burden.

It remains only to add that, even assuming, contrary to fact, that McLee had made a *prima facie* case, Chrysler would still be entitled to summary judgment, because McLee has failed to show that Chrysler's stated non-discriminatory reason for his termination, his demonstrably inadequate performance, was pretextual. *See Chambers,* 43 F.3d at 38 (2d Cir.1994). In particular, his claim that there is evidence (albeit mostly hearsay) that one of his immediate supervisors, Haas, was discriminatory (*see* Plaintiff's Memorandum of Law at 2–4) is irrelevant, since the decision to fire McLee was made, not by Haas, but by a higher-level supervisor, Robert Broderdorf (the very person who hired McLee) and was based, not on information provided by Haas, but on the documented performance inadequacies that McLee substantially concedes (*see, e.g.,* Broderdorf

Aff. At ¶¶ 9–21; Def.Dep.Ex. 28, 30; McLee Dep. at 263, 316).

Accordingly, for the foregoing reasons, Chrysler's motion for summary judgment is hereby granted.

SO ORDERED.