Anthony A. TANZINI, Plaintiff,

v.

MARINE MIDLAND BANK,
N.A., Defendant.

No. 3:95–CV–251.

United States District Court,
N.D. New York.

Jan. 22, 1997.

Wisehart & Koch, New York City (Arthur M. Wisehart, of counsel), for Plaintiff.

Phillips, Lytle, Hitchcock, Blaine & Huber, Jamestown, NY (Martin F. Idzik, of counsel), for Defendant.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

Plaintiff Anthony Tanzini alleges that he was discriminated against on the basis of his age and disability by his former employer, defendant Marine Midland Bank. In addition, Plaintiff alleges that Marine Midland terminated him in violation of the Employee Retirement Income Security Act and in abrogation of his contract of employment.

Tanzini, a white male who suffered from polio as a child, was a branch manager at Marine Midland's Union–Endicott branch in New York until he was laid off on February 10, 1993. At the time of his termination, Tanzini, who walks with a limp, was 46 years old and had completed approximately 25 years of service with Marine Midland.

Tanzini was hired by Marine Midland on February 29, 1968, as an adjuster in the Mastercharge Department. In 1970, Marine Midland promoted Plaintiff to Credit Manager in the Mastercharge Department; in 1975, Tanzini became a Loan Interviewer. In 1978, he was Director of Training for the Binghamton area, and in 1982 he was a Commercial Credit Manager. In 1985, he was again promoted, this time to Branch Manager. In 1989, Tanzini was elevated to District Sales Manager. Finally, from 1991 until his termination, Tanzini was Branch Manager/Assistant Vice–President of the Union–Endicott branch.

During Tanzini's tenure as a Marine Midland employee, he regularly received "good" to "very good" performance evaluations. (Tanzini Aff., Exhs. O & P). As Branch Manager in January 1988, Tanzini was selected to represent his region "at the 1988 Marine Valuable Performer (MVP) conference in St. Thomas, VI." (Tanzini Aff., Exh. U). In addition, less than a month prior to his termination, Tanzini received a "good" performance evaluation. (Tanzini Aff., Exh. O).

On February 10, 1993, Marine replaced Tanzini with Joyce E. Majewski, who was then 42 years old and 4½ years Plaintiff's junior. Prior to Tanzini's termination, Majewski's position in Marine's Commercial Lending department was eliminated as the

result of company-wide downsizing. Although Majewski did not have a college degree and did not have prior experience as a Branch Manager, "because [the District Manager] valued Ms. Majewski's leadership and commercial lending skills, and because he believed she was too valuable an employee for Marine to lose, he placed her in plaintiff's position," thus terminating Tanzini. (Def's Mem. of Law at 3).

### A. The Claims

Plaintiff Tanzini's Complaint asserts a claim for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York Human Rights Law, N.Y.Exec.L. § 290 *et seq.* Additionally, Plaintiff alleges disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Plaintiff also claims a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, for discrimination in connection with his eligibility for pension benefits. Finally, Plaintiff asserts a cause of action for breach of employment contract and promise to consider for promotion.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Furthermore, it is the substantive law that will determine what facts are material to the outcome of a case. *See Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

Initially, the moving party has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994).

### B. ADEA Claim & ADA Claim

Plaintiff brings a claim for age discrimination under the ADEA, 29 U.S.C. § 621 *et seq.*, and for disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Because the standards for liability under the ADEA and ADA are similar, they are easily analyzed together. *See, e.g., Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721–22 (2d Cir.1994). In fact, both standards are modeled upon the prohibitions of Title VII of the Civil Rights Act. *See, e.g., McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995) ("The substantive, antidiscrimination provisions of the ADEA are modeled upon the prohibitions of Title VII.").

Initially, the Court notes that although summary judgment is no longer a disfavored process for the elimination of groundless claims, *see Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552 (summary judgment favored to dispose of meritless claims), a district court should be wary of granting summary judgment in a discrimination case because the device is generally inappropriate where, as is typical, an employer's state of mind is relevant. *Gallo*, 22 F.3d at 1224. This is not to say that summary judgment is wholly inappropriate; rather, as the Second Circuit has noted, "the summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. [T]he purposes of summary judgment ... apply no less to discrimination cases than to

... other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Considering the relative ease of bringing a suit alleging discrimination and the difficulty and expense of defending against such a suit, courts correctly find summary judgment proper where allegations of discriminatory intent are merely conclusory.

**i.** *Prima facie* **case under ADEA & ADA**

Under the ADEA, an employer is prohibited from discharging an employee "because of [the employee's] age." 29 U.S.C. § 623(a)(1). However, an employer may lawfully discharge an employee based on reasonable factors other than age. *See* 29 U.S.C. § 623(f)(1). Similarly, under the ADA an employer is prohibited from discriminating against an employee on the basis of an employee's disability. *See* 42 U.S.C. § 12132.

In the Second Circuit, ADEA & ADA cases are analyzed under the familiar framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case. *See, e.g., Promisel v. First American Artificial Flowers,* 943 F.2d 251, 259 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Under the test articulated in *McDonnell Douglas,*

> a plaintiff has the burden of establishing a *prima facie* case of discrimination. This he can do by showing that [ (1) ] he was a member of a protected [ ] group, [ (2) ] that he was qualified for his position, [ (3) ] that he was discharged, [and (4) that he was discharged] under circumstances giving rise to an inference of discrimination. The employer then has the burden of articulating a legitimate, nondiscriminatory reason for its action.... The burden shifts back at that point to the plaintiff to prove that this reason is pretextual.

*Promisel,* 943 F.2d at 259. Incidentally, this burden-shifting analysis also applies to discrimination claims under New York's Executive Law. *See Charrette v. S.M. Flickinger, Co.,* 806 F.Supp. 1045, 1054–55 (N.D.N.Y. 1992); *Tyler v. Bethlehem Steel,* 958 F.2d 1176 (2d Cir.1992).

The Court will now examine each of the steps in the burden shifting analysis in order to determine whether Plaintiff has put forth a viable cause of action. We must be mindful that regardless of how these burdens are described, Plaintiff retains the ultimate burden of persuading the fact finder. *See Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157, 161 (2d Cir.1991).

Here, the parties do not dispute the fact that Tanzini has established the first element of his *prima facie* ADEA and ADA cases. Tanzini was 46 years old at the time of his termination; thus he clearly falls within the protected group under the ADEA, which includes all persons over the age of 40. 29 U.S.C. § 631(a). Likewise, there is no dispute that Plaintiff is disabled. Furthermore, there is also no dispute as to the third element of the *prima facie* case—that Plaintiff was discharged. The controversy here surrounds the remaining two elements, job qualification and inference of discrimination.

In cases claiming improper discharge, the Second Circuit has modified the job qualification element of the *McDonnell Douglas* test. Instead of focusing "on the plaintiff's qualifications, which are the relevant inquiry in the hiring context, the focus is on measuring the employee's ... job performance." *Charrette,* 806 F.Supp. at 1056 (*citing Song v. Ives Lab., Inc.,* 957 F.2d 1041, 1045 (2d Cir.1992)). Although some court's have defined this job performance component in terms of whether the employee was doing the job well enough "[to] meet [his] employer's legitimate expectations," *see Charrette,* 806 F.Supp. at 1056 (*quoting Meiri,* 759 F.2d at 995), it is now clear that "an employer's legitimate expectation of performance has no place in determining qualification at the *prima facie* stage of the case." *Mulqueen v. Daka, Inc.,* 909 F.Supp. 86, 90 (N.D.N.Y.1995) (summarizing cases), *aff'd,* 1996 WL 545594 (2d Cir.1996). Instead, " 'the employer's acceptance of his work without express reservation is sufficient to show that the plaintiff was performing satisfactorily for the purpose of shifting the burden of proof.' " *Powell v. Syracuse Univ.,* 580 F.2d 1150, 1155 (2d Cir.1978) (*quoting Flowers v. Crouch–Walker Corp.,* 552 F.2d 1277, 1283 (7th Cir.1977)).

■ Here, there is little doubt as to whether Tanzini was qualified to be a Branch Manager at Marine Midland. Tanzini had been Director of Training at Marine Midland Southern for four years and had taught the OMEGA Commercial Lending Program to other Branch Managers. In addition to his extensive experience within Marine Midland, Tanzini is also a past President of the Broome County Chapter of the American Institute of Banking and served on its Board of Directors for approximately 7 years. Finally, during Tanzini's tenure as a Marine Midland employee, he regularly received "good" to "very good" performance evaluations, including an evaluation done approximately one month prior to his termination. (Tanzini Aff., Exhs. O & P). Accordingly, Plaintiff has met the qualification requirement under *McDonnell Douglas*.

■ The more difficult question is whether Tanzini was discharged under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas*, 411 U.S. at 792, 93 S.Ct. at 1819–20. As the Second Circuit recently noted, "[i]n a case such as the present one, where the plaintiff's evidence is entirely circumstantial, the pertinent question is whether plaintiff's main case contains evidence sufficient to permit the trier of fact to draw an inference that the prohibited motive was a substantial factor in the adverse employment decision." *Burger v. New York Institute of Technology*, 94 F.3d 830, 833 (2d Cir.1996). Furthermore, "[i]n cases involving a reduction in force, the inquiry is highly fact specific." *Burger*, 94 F.3d at 833.

Here, Tanzini was replaced by a younger, albeit only 4½ years younger, employee. In instances like this, the Supreme Court has cautioned that "[i]n the age-discrimination context, [an inference that an employment decision was based on a discriminatory criterion] can not be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). Instead, on the issue of discriminatory intent, "the *McDonnell Douglas* analysis is neither 'rigid' nor 'mechanized' and that the primary focus is always whether an employer treats an employee less favorably than other employees for an impermissible reason." *Montana v. First Fed. Sav. and Loan Ass'n*, 869 F.2d 100, 104 (2d Cir.1989).

In resolving this issue, the focus is not limited to whether an older employee was replaced by a younger one. Rather, an inference of discrimination can be established by evidence showing that younger employees *were retained* in positions similar to that of the plaintiff's. For example, in *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106 (2d Cir.1992), the Second Circuit stated that an inference of discrimination was permissible where a reduction in force brought on by the consolidation of two accounting departments caused the employer to lay off two of three older employees, but none of the 20 younger accounting employees whose job titles "closely paralleled" those held by the plaintiff in his current and prior positions at the company. *Maresco*, 964 F.2d at 111–12; *see also Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir.1988) (holding that "[e]vidence that an employer fired qualified older employees but retained younger ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent and to require the employer to articulate reasons for its decision"); *Meinecke v. H & R Block*, 66 F.3d 77, 84 (5th Cir.1995) (holding that to make out the fourth element of a *prima facie* case of sex discrimination, plaintiff must prove "that males remained in similar positions" and similarly for age discrimination, "that she was otherwise discharged because of her age").

Here, Tanzini appears to be the only Branch Manager in his region that was terminated, although there were nineteen Branch Managers at the time of his termination. Of the nineteen Branch Managers, seven were under forty years old. Furthermore, Linda Drabik, Vice President and Manager of EEO Compliance and Diversity at Marine Midland, stated in her deposition that no employee under the age of forty was terminated in the reduction in force program that led to Plaintiff's termination. (Drabik Tr. at 70).

Remarkably, the present factual scenario is almost identical to that in *Burger v. New*

*York Institute of Technology,* 94 F.3d 830 (2d Cir.1996). In *Burger,* the fifty-seven year old plaintiff was terminated, ostensibly due to a reduction in force program. According to Burger, she never received any negative performance evaluations, yet was the only person in the accounting department who was terminated. *Burger,* 94 F.3d at 832. In its analysis of whether plaintiff had established a *prima facie* case, the Second Circuit concluded that there was "evidence indicating that [defendant] believed that the lay-off decision involved a choice among three employees in the accounting department. This was sufficient to allow a trier to find that the pertinent decision was a choice of which person to lay off and not simply which job to eliminate." *Burger,* 94 F.3d at 834. Furthermore, Burger was the oldest of the three persons evaluated. Even more compelling, and strikingly similar to the facts here, Burger's replacement

> the 24 year-old Minthorn was transferred into the accounting department when [defendant] knew that a reduction in force would soon necessitate the elimination of [Minthorn's position] in [another] department. It was in fact Minthorn's transfer that necessitated·a lay-off. A trier might well find that the transfer of a younger person to the accounting department in such circumstances supported Burger's claim of an impermissible motive.

*Burger,* 94 F.3d at 832.

Here, as in *Burger,* it was another employee's transfer that necessitated Tanzini's termination. Furthermore, younger employees were retained in similar Branch Manager positions at the time Tanzini was terminated. Accordingly, there is little doubt that Tanzini has established a *prima facie* case of discrimination based on his age. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 65–66 (2d Cir. 1995) ("plaintiff's burden of proof in a ... discrimination action is *de minimis* at the *prima facie* stage").

■ Turning to Tanzini's claim of disability discrimination, he alleges that his supervisor, Andrew·Fornarola, considered Tanzini's disability to be personally offensive. As evidence of this Plaintiff points to an incident at the Bank's 1991 Christmas Party, where For-narola stated to a large group of persons that Tanzini "walks like that even when he's sober." (Tanzini Aff., ¶ 124).

Although some circuits have held that for such a comment to sustain a *prima facie* case it must have some connection to the employer's decision to terminate the plaintiff, *see McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686–87 (7th Cir.1991) ("[u]nless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory discharge."), stray remarks may be evidence that discrimination played a part in the employment decision—although they do not compel that conclusion. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 251, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989).

In any event, because the record shows that Tanzini was the only disabled employee who was terminated, and in light the fact that Fornarola was the person in management who actually decided that Tanzini was the one to be terminated, Fornarola's comment supports an inference of a discriminatory employment decision. Furthermore, given that the plaintiff's burden is only *de minimis* in proving a *prima facie* case, *see Quaratino,* 71 F.3d at 65–66, the Court must conclude that Tanzini has established a *prima facie* case of disability discrimination as well.

#### ii. Non-discriminatory reason for termination

■ Establishment of the *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). In order to rebut this presumption, the employer has the burden of producing evidence that the employee was discharged for a legitimate, nondiscriminatory reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The defendant, however, "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (*citing Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295–96, 58 L.Ed.2d 216 (1978)). As the

Supreme Court stated in *Texas Dep't of Community Affairs v. Burdine:*

> It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted.

*Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. The strength of the defendant's rebuttal, to a large extent, depends on the strength or weakness of plaintiff's *prima facie* case. *See Lieberman v. Gant,* 630 F.2d 60, 66–67 (2d Cir.1980) (noting relationship between the burden borne by the employee and the employer).

Moreover, the employer need only "articulat[e] some legitimate, nondiscriminatory reason" for the termination. *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978). In this circuit, "[i]t is enough for the defendants in the second phase of the case to bring forth evidence that they acted on a neutral basis. They do not have the burden of establishing that their basis was sound." *Lieberman,* 630 F.2d at 65.

Marine Midland states that Tanzini was terminated as part of a reduction in work force, and that his termination was due to the fact that Marine wished to focus more on its commercial business and Tanzini lacked commercial lending experience. In addition, Marine Midland states that "plaintiff had not demonstrated strong performance as a manager of the Union–Endicott Branch." (Defs' Mem. of Law at 5).

However, what Defendant fails to appreciate is that a reduction in force program is not a shield to every allegation of discrimination. Here, the Union–Endicott Branch was not closed, nor was Tanzini's position eliminated. Instead, one branch manager out of nineteen was fired. Clearly, Marine Midland went through some kind of decision process in determining to terminate Tanzini over the other eighteen branch managers. Furthermore, because Tanzini has established his *prima facie* case, the burden now rests squarely on Marine Midland to provide a legitimate non-discriminatory reason for its decision to terminate Tanzini. *See Burger,* 94 F.3d at 834; *Maresco,* 964 F.2d at 111–12; *Branson,* 853 F.2d at 771; *Meinecke,* 66 F.3d at 84.

In response to Marine's assertion that he was not demonstrating strong performance, Tanzini states, and Defendant does not deny, that "Mr. Fornarola never had any discussions with me about any supposed weaknesses in my performance; on the contrary he repeatedly told me that my performance was 'good,' an evaluation corroborated by the written performance that he prepared in January 1993." (Tanzini Aff., ¶ 36). Furthermore, Plaintiff avers that "Mr. Fornarola specifically stated to me that my termination had nothing to do with my performance." (Tanzini Aff., ¶ 42).

Plaintiff goes on to assert that Marine's proffered justification is simply a ruse because commercial lending is not a responsibility of a Branch Manager, but is handled by a separate department of Marine Midland. In any event, Tanzini states that he has extensive experience in the commercial credit area having been a Commercial Credit Manager. Moreover, Tanzini states that "throughout 1983–1989 I was recognized as the 'top performer' in the commercial area in Endicott." (Tanzini Aff., ¶ 63).

In support of its decision to terminate Tanzini, Defendant offers a handwritten table of subjective rankings listing the Branch Managers that worked under Fornarola. (See Fornarola Aff., Exh. A). In addition to being exceptionally confusing, the document appears to buttress Plaintiff's case rather than rebut it. As the numbered rankings show, many younger and non-disabled employees with the same or lower ratings were not terminated.

Noting that the Court must resolve all ambiguities and draw all reasonable inferences against the moving party, *see Matsushita Elec.,* 475 U.S. at 586, 106 S.Ct. at 1355–56, Marine Midland has failed to offer a

legitimate non-discriminatory reason for the termination, let alone an explanation that is "legally sufficient to justify a judgment for the defendant." *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95. Accordingly, Defendant's Motion for Summary Judgment seeking dismissal of Plaintiff's ADEA, ADA, and New York Human Rights Law claims must be denied.

## C. ERISA Claim

■ Plaintiff also claims a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, for discrimination in connection with his eligibility for pension benefits.

Section 510 of ERISA prohibits an employer from discharging a participant in a benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. To show a violation of section 510, a plaintiff must "demonstrate that [his] dismissal was motivated by preventing the vesting of pension benefits." *Logan v. St. Luke's–Roosevelt Hospital Ctr.*, 636 F.Supp. 226, 236 (S.D.N.Y.), *aff'd without op.*, 805 F.2d 391 (2d Cir.1986); *see also Dister v. Continental Group,* 859 F.2d 1108, 1111 (2d Cir.1988) (noting that 29 U.S.C. § 1140 was intended primarily to prevent "unscrupulous employers from discharging or harassing their employees from obtaining vested pension rights").

Here, Tanzini was vested in Marine's pension plan when he was terminated. His only evidence of discrimination in violation of ERISA is that Marine terminated him before he was able to attain greater benefits at age 55, 65 and 70. However, Tanzini offers no proof that his termination was *motivated* by his potential for greater pension benefits.

Should this argument hold sway, every terminated employee who has not worked until a set age could bring an ERISA action on the basis of every termination. This is clearly not the law under section 510 of ERISA. *See, e.g., Dister,* 859 F.2d at 1111 (no cause of action where loss of benefits is a "mere consequence of, but not a motivating factor behind, a termination of employment"); *Kelly v. Chase Manhattan Bank,* 717 F.Supp. 227, 232 (S.D.N.Y.1989) (granting summary judgment because claim was simply that "had he remained as an employee, he would have accrued additional benefits").

Consequently, Plaintiff's claim under ERISA must be dismissed.

## D. Breach of Employment Contract

■ Finally, Plaintiff asserts a cause of action for breach of employment contract and promise to consider for promotion. It is settled law in New York that absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party for any reason, or even no reason. *See Mycak v. Honeywell, Inc.,* 953 F.2d 798, 801 (2d Cir.1992); *Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919, 920 (1987). Under this rule, limitations on the right of an employer to discharge an at-will employee have been narrowly construed by the courts of New York. Specifically, the New York Court of Appeals has held that "absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 237, 448 N.E.2d 86, 89 (1983).

■ Although Plaintiff recognizes the doctrine of employment-at-will, he states that here, an employment contract arose from oral statements and from Marine Midland's Employee Handbook and Corporate Training Guide. Plaintiff correctly notes that an employer's right to terminate an employee can be limited; however, New York courts have carved a very narrow exception to the general employment-at-will rule. An action to recover damages for breach of contract may be maintained if the employee demonstrates that: (1) he was induced to leave his prior employment by the assurance that his new employer would not discharge him without cause; (2) this assurance was incorporated into the employment application; (3) he re-

jected other offers of employment in reliance on the assurance; and (4) the handbook or manual contained a provision that employees would be discharged only for just cause and such provision was strictly enforced. *See Weiner v. McGraw-Hill,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982); *D'Avino v. Trachtenburg,* 149 A.D.2d 401, 539 N.Y.S.2d 755 (2d Dep't 1989).

In support of his position, Plaintiff offers *Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847, 853 (2d Cir.1985). In *Gorrill,* the Second Circuit held that a contractual commitment could be implied from a defendant's operations manual where the manual specifically stated that seniority would be the *sole* factor in terminations stemming from a reduction in force. 761 F.2d at 847. The keystone of the Second Circuit's decision in *Gorrill* was the specificity with which the defendant's policy was articulated in its handbook; the operations manual of the defendant in *Gorrill* stated:

> [s]eniority shall be the sole factor for determining demotions, transfers or terminations caused by job elimination or force reduction when a senior employee is qualified to perform the available work or can be adequately trained in a reasonable or practicable period of time.

*Gorrill,* 761 F.2d at 850. From this language, and evidence that the defendant gave the plaintiff repeated oral and written assurances that the operations manual contained the terms and conditions of employment, the Second Circuit discerned an "express limitation" on the defendant's right to terminate at will. *Gorrill,* 761 F.2d at 850.

Similarly, in *Mycak v. Honeywell, Inc.,* 953 F.2d 798 (2d Cir.1992), the Second Circuit held that a "job security policy" stated in an employer's handbook contractually bound the defendant and rejected the defendant's contention that the provisions amounted only to non-binding "general statements of policy and supervisory guidelines." 953 F.2d at 802. Again, the linchpin of the Circuit's decision was that the defendant's policy set forth a very specific and detailed procedure for work force reduction in mandatory and unqualified terms. *Mycak,* 953 F.2d at 802.

Based upon the logic articulated in these two decisions, Tanzini contends that a contractual obligation limiting Marine Midland's right to terminate could be inferred from Marine Midland's Employee Handbook, Corporate Training Guide and from oral assurances given to him by Defendant. Plaintiff cites to language in Marine Midland's Employee Handbook that states that an employee will be placed on probation for the first three months of employment and that during that period the employee may be terminated at any time and without notice. (Flannery Aff., Exh. A). The inference, Plaintiff argues, is that after the probation period ends, an employee can only be terminated for cause. Additionally, Plaintiff cites to language in Marine Midland's Corporate Training Guide that states, *inter alia,* that Marine's "Executive Development Strategy is intended to: ... Demonstrate Marine's commitment to long-term growth, career opportunity and recognition." (Tanzini Aff., Exh. V).

However, unlike the language in *Gorrill* and *Mycak,* Marine Midland's Employee Handbook and Corporate Training Guide are not written in mandatory and unqualified terms. Moreover, the Corporate Training Guide simply articulates that as a general policy Marine is committed to long-term growth and career opportunities for its employees. Indeed, what employer would not be?

It would be unreasonable to infer that such language guarantees an employee continued employment. To hold that such general and nonspecific language amounts to an "express limitation" on an employer's right to terminate would be counter to a long line of New York cases that have held that policies articulated in an employee handbook do not create such a limitation. *See, e.g., Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987) (personnel manual did not constitute limitation by express agreement on employer's right to terminate employee at will); *Paolucci v. Adult Retardates Center, Inc.,* 182 A.D.2d 681, 582 N.Y.S.2d 452 (2d Dep't 1992) (neither oral assurances made to at-will employee nor general provision in employee manual

were sufficient to limit employer's right to discharge employee at any time, for any reason); *Rich v. Coopervision, Inc.,* 198 A.D.2d 860, 604 N.Y.S.2d 429 (4th Dep't 1993) (employee handbook was not contractual limitation upon employer's freedom to discharge employee); *Fiammetta v. St. Francis Hospital,* 168 A.D.2d 556, 562 N.Y.S.2d 777 (2d Dep't 1990) (limitation on the employer's right to terminate at-will employment will not be inferred solely from the existence of policy manuals or the existence of an internal grievance procedure).

Additional support for this conclusion is found in the disclaimer that was printed on the first page of Marine Midland's Employee Handbook. This disclaimer states that no contract of employment is created by reason of the policies that follow and that Marine Midland "may change such policies, etc. at any time without notice." (Flannery Aff., Exh. A).

Accordingly, Plaintiff has not met his burden in establishing that an employment contract existed between himself and Marine Midland. Thus, Plaintiff's breach of contract claim and breach of promise to consider for promotion must be dismissed.

## III. CONCLUSION

In summary, Plaintiff has established a *prima facie* case of age and disability discrimination, which Defendant has not rebutted by offering a legitimate non-discriminatory reason for Plaintiff's discharge. Accordingly, Defendant's Motion for Summary Judgment seeking dismissal of Plaintiff's ADEA, ADA and New York Human Rights Law claims is DENIED.

However, summary judgment is appropriate as to Plaintiff's claim that Marine Midland violated the Employee Retirement Income Security Act. In addition, Plaintiff has not met his burden in establishing that an employment contract existed between himself and Marine Midland. Thus, Plaintiff's breach of employment contract claim is dismissed.

Accordingly, Defendants' Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART, dismissing Plaintiff's ERISA and breach of employment contract claims only.

**IT IS SO ORDERED.**