Betty Jane BURGER, Plaintiff–
Appellant,

v.

NEW YORK INSTITUTE
OF TECHNOLOGY,
Defendant–Appellee.

No. 1135, Docket 95–7859.

United States Court of Appeals,
Second Circuit.

Argued April 2, 1996.

Decided Sept. 9, 1996.

Morton S. Robson, Robson & Miller, New York City (Kenneth N. Miller, of counsel), for Plaintiff–Appellant.

Douglas P. Catalano, Fulbright & Jaworski, New York City (Neil G. Sparber; Edward Dolido, of counsel), for Defendant–Appellee.

Before OAKES, WINTER, and CALABRESI, Circuit Judges.

WINTER, Circuit Judge:

Betty Jane Burger appeals from Judge Real's dismissal of her action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* The district court dismissed Burger's claim after her main case-in-chief. However, the district court did not make the findings required under Rule 52(c), Fed.R.Civ.P., and, viewing the evidence in the light most favorable to Burger, we conclude that she established a *prima facie* case. We therefore reverse.

## BACKGROUND

Burger was employed for approximately eleven years in the accounting department of New York Institute of Technology ("NYIT"). On November 2, 1990, she was terminated as part of what NYIT described as a reduction in force caused by financial pressures.

In October 1991, Burger filed the instant action alleging that she was discriminated against on the basis of her age and gender, in violation of the ADEA, 29 U.S.C. §§ 623(a)(1), (a)(2), and (d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. She also alleged a violation of Article XV of New York Human Rights Law and intentional infliction of emotional distress. After discovery was completed, NYIT moved for summary judgment. Then–Chief Judge Platt granted the motion as to all but the ADEA claim. Burger has now abandoned her other claims.

A bench trial was held before visiting Judge Real. Burger's case-in-chief consisted primarily of testimony by herself, Lawrence Proman, former Senior Vice President and Comptroller of NYIT, and Theresa Perticaro Hechler, former Assistant Comptroller of NYIT. Burger also introduced portions of the depositions of William Udry, NYIT Senior Vice President and Treasurer, Paul Sintef, Assistant Comptroller, and Anthony Onorato, the NYIT Vice President and Comptroller who terminated Burger.

Burger testified that her duties encompassed a variety of accounting and bookkeeping tasks that included bank reconciliation, handling cash receipts, auditing and accounting for NYIT's DeSeversky Conference Center and its Horizon Day Camp, making daily bank deposits for the entire campus and the NYIT culinary school, paying the bills for the culinary school, handling fund advances for all departments of the school, assisting the bursar department, and providing secretarial service for Udry and Onorato. Proman's and Perticaro's testimony generally supported that of Burger with regard to her job functions. Burger had also occasionally assumed supervision of the accounting department when the regular supervisor was ill. Testimony reflected that Burger, at one time or another, performed all of the tasks in the

accounting department with the exception of grants, which is a specialized area. Burger testified that in eleven years of employment at NYIT she never received any negative performance reviews or attendance complaints but rather only commendations from her superiors. Deposition testimony by the NYIT managers is consistent with Burger's claims with regard to both performance and attendance.

At the time of her termination, Burger's annual salary was $24,368. Her pension rights had vested. Of the seven non-supervisory persons employed in the accounting department, Burger was the only one terminated. She was 57 years old. The other six accounting employees ranged in age from 24 to 36; each had less than four years' service at NYIT, with the exception of one 30 year-old employee who, like Burger, had eleven years of service. Four of the other six employees had salaries lower than Burger's.

According to Udry, NYIT management determined "over the summer and fall of 1990" that one accounting department employee would be terminated as part of the overall reduction in force. Three candidates with similar, although not identical, job functions were considered for termination. One was David van Sleet, age 24, who was performing bank reconciliation for NYIT—a function that Burger had performed in the past. Another was Donna Minthorn, age 24, who had been employed at NYIT for one year and eight months, but during only the last six months in the accounting department. Minthorn had been transferred from another department to replace a worker in the department who had been terminated for cause. At the time of Burger's discharge, Minthorn's work consisted of entering cash receipts and code numbers—work that Burger testified she had previously performed and could have performed in addition to her own duties at the time she was terminated.

The deposition testimony of Onorato, Udry, and Sintef was that Burger was selected for termination because her functions were the most expendable in the accounting department. Onorato testified that Burger was eliminated because of the "redundancy" of her job function. This redundancy appears to have concerned the accounts of the DeSeversky Conference Center. He stated that Burger "tabulated records and recorded invoices and accounts receivable, and that generally was provided for by some individual at the DeSeversky Conference Center." After Burger was terminated, the accounting department no longer handled Conference Center accounts. Onorato and Sintef further testified that they believed that Burger was "overqualified" for the work that Minthorn was doing.

After the close of Burger's case-in-chief, NYIT moved for judgment. Much of the argument of counsel for both parties addressed the question of the extent to which the ADEA requires an employer to find suitable employment within a firm for an older employee whose responsibilities are eliminated, even if that entails the replacing of a younger co-worker. Judge Real granted NYIT's motion. His decision states in its entirety that the court "found, among other things, that [NYIT] was not required to replace one of its employees, Donna Minthorn, with [Burger] where [Burger]'s job function was eliminated and [Burger] was not performing the duties assigned to Donna Minthorn at the time of the reduction in force." *Burger v. N.Y. Inst. of Technology*, No. 91 Civ. 4183 (E.D.N.Y. August 4, 1995).

## DISCUSSION

A plaintiff asserting an employment discrimination claim must meet an initial burden of presenting evidence sufficient to establish a *prima facie* case of the alleged violation—in Burger's case, of age discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995). Once the plaintiff establishes a *prima facie* case, the burden shifts to the employer to rebut it through the introduction of evidence that supports a finding that unlawful discrimination was not the cause of the discharge.

*Hicks,* 509 U.S. at 506–07, 113 S.Ct. at 2746–47; *Cronin,* 46 F.3d at 203. The plaintiff retains the "ultimate burden of persuasion" and the burden of proof to demonstrate that the challenged employment action was the result of intentional discrimination. *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749; *Cronin,* 46 F.3d at 203.

■ A *prima facie* case of discharge resulting from age discrimination is established if the plaintiff shows, through direct or circumstantial evidence, that: (1) she was within the protected age group, (2) she was qualified for the position, (3) she was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of discrimination. *Cronin,* 46 F.3d at 204.

Burger's case-in-chief clearly satisfied the first three elements of the *prima facie* case. The issue is thus whether it satisfied the fourth prong of the test applicable to reorganizations or reductions in work force: did "the discharge occur[ ] under circumstances suggesting that age was a factor"? *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994).

Much of the parties' arguments are directed to the issue of whether an employer is forbidden by the ADEA from terminating older employees during a reduction in force when there are jobs held by younger employees that the older ones are qualified to perform. We believe that this framing of the issue obscures the question before us.

■ Our discussion begins with first principles. The ADEA prohibits an employer from terminating an employee because of age. (There are no issues in the instant matter implicating the doctrine of disparate impact. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *NAACP v. Town of East Haven,* 70 F.3d 219, 225 (2d Cir.1995).) It simply forbids employment decisions in which the age of the adversely affected employee is a substantial factor. *See* 29 U.S.C. § 623(a)(1). In a case such as the present one, where the plaintiff's evidence is entirely circumstantial, the pertinent question is whether plaintiff's main case contains evidence sufficient to per-

mit the trier of fact to draw an inference that the prohibited motive was a substantial factor in the adverse employment decision.

■ In cases involving a reduction in force, the inquiry is highly fact specific. We illustrate by analyzing two polar hypotheticals. In the first, an older maintenance employee is laid off when a company shuts down a plant. The older employee could not prevail on an ADEA claim simply because a younger maintenance employee continued to be employed by the company in a similar plant, no matter how identical their responsibilities. The rationale for granting judgment against the older worker would be that no reasonable trier could find that the shutting down of a plant was motivated by the age of the older maintenance person. In the second hypothetical, a company with a phone bank lays off the oldest operator. The company could not prevail on a motion for judgment as a matter of law in such a case on the theory that a desire to eliminate the particular phone used by that operator was the sole motive for the lay-off.

We proffer these extreme hypotheticals to clarify our decisions in similar cases. We have stressed that the similarity of the jobs held by an older and younger employee is the touchstone for determining whether a lay-off of the older may be found to be an ADEA violation by a trier of fact. In *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 111–12 (2d Cir.1992), for example, we held that an inference of discrimination was permissible where a reduction in force brought on by the consolidation of two accounting departments caused the employer to lay off two of three older employees, but none of the 20 younger accounting employees whose job titles "closely paralleled" those held by the plaintiff in his current and prior positions at the company.

For the purposes of establishing a *prima facie* case under the ADEA, therefore, we have considered as relevant for comparison non-protected employees with similar, though not identical, job functions and titles to those of the older employees. Other courts of appeals have also held that the job functions of employees being compared for ADEA purposes must be "similar" though not necessar-

ily identical. *See Smith v. Cook County*, 74 F.3d 829, 831 (7th Cir.1996) (holding that fourth element of a *prima facie* case is satisfied when "the employees who were more favorably treated [were] situated similarly to the plaintiff"); *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir.1988) (holding that "[e]vidence that an employer fired qualified older employees but retained younger ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent and to require the employer to articulate reasons for its decision"); *Meinecke v. H & R Block*, 66 F.3d 77, 84 (5th Cir.1995) (holding that to make out the fourth element of a *prima facie* case of sex discrimination, plaintiff must prove "that males remained in similar positions" and similarly for age discrimination, "that she was otherwise discharged because of her age").

■ We emphasize, however, that similarity of jobs is a factor to be considered but not a complete surrogate for the question of whether the plaintiff's main case supports a reasonable inference of a discriminatory motive. The Supreme Court has "stressed that the *McDonnell Douglas* analysis is neither 'rigid' nor 'mechanized' and that the primary focus is always whether an employer treats an employee less favorably than other employees for an impermissible reason." *Montana v. First Fed. Sav. and Loan Ass'n*, 869 F.2d 100, 104 (2d Cir.1989).

To return to our first hypothetical, where one of two plants is shut down, the similarity of maintenance work in the remaining plant would not support an inference that a maintenance worker in the closed plant had been laid off because of age. Also, a laid-off employee who does not have a functional counterpart in the company—that is, there is no similar job—is not necessarily precluded for that reason from bringing an ADEA action. For example, in *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1225 (2d Cir.1994), we reversed a grant of summary judgment for the employer and held that the plaintiff established a *prima facie* case where the company transferred "most of [the terminated employee's] duties" to another department and eliminated many of her remaining

responsibilities, only to resuscitate them "in [another] form" months after her discharge.

■ In cases of reductions in force, therefore, the critical function is always whether the circumstances will logically support an inference that the age of a laid-off employee was a substantial motivating factor. In analyzing that function, all of the circumstances must be considered.

■ We turn now to the present case. We believe that Burger offered sufficient evidence to allow—although not compel—a trier of fact to draw an inference of age discrimination. NYIT argues in essence that the accounting department's responsibilities concerning the accounts at the DeSeversky Center were eliminated and that Burger's termination logically followed that elimination. However, we have no such clear-cut case before us. Her responsibilities regarding the DeSeversky Center may have been terminated as redundant, but the record is not particularly clear as to what portion of Burger's responsibilities were related to DeSeversky work or as to how fungible those responsibilities were with those of employees in the accounting department who were not laid off. It is true that Burger bore the burden of proof on these matters. However, she presented evidence that "a substantial portion of the duties that [she] performed were [ ] not eliminated" and, inferentially, were transferred to younger employees. There was also evidence indicating that NYIT believed that the lay-off decision involved a choice among three employees in the accounting department. This was sufficient to allow a trier to find that the pertinent decision was a choice of which person to lay off and not simply which job to eliminate. Moreover, Burger was the oldest of the three. Finally, the 24 year-old Minthorn was transferred into the accounting department when NYIT management knew that a reduction in force would soon necessitate the elimination of a position in that department. It was in fact Minthorn's transfer that necessitated a lay-off. A trier might well find that the transfer of a younger person to the accounting department in such circumstances supported Burger's claim of an impermissible motive. Burger's main case was, therefore,

sufficient to survive a motion for judgment as a matter of law.

Of course, a trier might also find against Burger and conclude that her evidence did not create an inference of an impermissible motive. NYIT argues that the district court did not hold that Burger's evidence was insufficient as a matter of law under Rule 50(a) but rather found facts against her under Rule 52(c). Rule 52(c) requires the district court to "find the facts specially and state separately its conclusions of law thereon." Fed.R.Civ.P. 52(a). If findings of fact were made, we would review them pursuant to Rule 52 under a "clearly erroneous" standard. *Sumner v. United States Postal Serv.*, 899 F.2d 203, 208 (2d Cir.1990); 5A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 52.03[1] (2d ed.1996). However, the district court's one-sentence statement in no way constitutes the requisite findings under Rule 52. As a result, its decision must be viewed as a judgment entered as a matter of law under Rule 50(a), and the evidence must be viewed in the light most favorable to, and drawing all reasonable inferences in favor of, Burger. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962); MOORE, ¶ 50.02[1].

We therefore reverse and remand for proceedings consistent with this opinion. *See generally* MOORE, ¶ 52.14[2] (outlining procedures governing remand to district court for failure to make findings of fact required by Rule 52(c)). In view of our recasting of the issues in this case, we believe that the case should be retried rather than reconsidered on the present record.