**Armand P. DESHAIS and Karl H. Stieg, Plaintiffs,**

v.

**CONSOLIDATED RAIL CORP., Defendant.**

93–CV–1223.

United States District Court, N.D. New York.

Feb. 26, 1997.

*See* N.Y.C.P.L.R. § 5004 (McKinney 1992).

Office of Benjamin T. Garry, Albany, NY, for Plaintiffs;  Benjamin T. Garry, of counsel.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for Defendant;  Robert B. Conklin, Adam W. Perry, of counsel.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I.  BACKGROUND

Plaintiffs Armand Deshais and Karl Stieg allege that they were discriminated against on the basis of their age by defendant Consolidated Rail Corporation ("Conrail"). Plaintiffs also allege that Conrail committed fraud by submitting falsified documents and providing inaccurate information to the Equal Employment Opportunity Commission ("EEOC") in connection with the EEOC's investigation of Plaintiffs' allegations.

The following factual background is taken from Defendant's Local Rule 7.1(f) Statement of Uncontested Facts which Plaintiffs have not disputed.  In June, 1992, Conrail was in the midst of a company wide workforce reduction program.  Over the preceding fifteen years, Conrail had implemented a series of workforce reductions that reduced its staffing levels from approximately 100,000 employees in 1976 to approximately 22,000 employees in 1996.

In a continuing effort to reduce the costs associated with redundant operations and to take advantage of advances in communication technology and data processing, Conrail planned to consolidate its six geographically

dispersed regional customer service centers. Through a planned June 30, 1992, workforce reduction, the six Customer Operations Centers ("COCs") were to be consolidated into a single National Customer Service Center ("NCSC") in Pittsburgh, Pennsylvania. Both plaintiffs were employed at Conrail's COC in Selkirk, New York.

As a result of the planned consolidation, Conrail recognized that in order to fully staff its new single NCSC it would no longer need all 73 of the supervisors currently employed in the six COCs. Accordingly, Conrail implemented a plan to rank the 73 supervisors. (Def's Rule 7.1(f) Statement ¶ 10). The procedure involved a score based upon performance appraisals (50%), a structured interview (30%), supervisor's recommendation (10%), and specific project/team activities (10%). (O'Donnell Aff. ¶ 14). As a result of this evaluation process the 73 supervisors were ranked from highest to lowest. Plaintiff Deshais ranked 65th and plaintiff Stieg ranked 71st out of the 73 supervisors evaluated. (O'Donnell Aff. ¶ 16).

After completing the evaluation process, Conrail eliminated the positions of the 10 lowest ranking supervisors, including plaintiffs Deshais and Stieg, and transferred the remaining supervisors to the NCSC or to other non-agreement management positions elsewhere in the company. Of the 73 COC supervisors evaluated, only 9 were younger than forty on June 30, 1992, and Conrail retained fifteen supervisors who were older than plaintiff Deshais and twenty-two supervisors who were older than plaintiff Stieg. (Def's Rule 7.1(f) Statement ¶¶ 16, 21). In addition, three of the four oldest employees whose positions were abolished in the June 1992 workforce reduction were subsequently placed in non-agreement management positions equal to or higher in job level than their former positions. (Def's Rule 7.1(f) Statement ¶ 19).

Nevertheless, seven of the ten supervisors whose positions were abolished, including the plaintiffs here, filed charges of age discrimination against Conrail with the EEOC. Several EEOC offices investigated the charges because the seven charging employees were located in different states or regions. All EEOC offices involved issued determinations of no probable cause. (Def's Rule 7.1(f) Statement ¶ 20).

## A. Procedural History

Plaintiffs commenced this action on September 23, 1993. On January 31, 1994, more than 120 days after commencing the action and more than 210 days after the EEOC issued to Plaintiffs a 90-day Right to Sue Letter on June 21, 1993, Plaintiffs requested an extension of time to serve Conrail. On February 15, 1994, Magistrate Judge Hurd granted Plaintiffs' request to extend the service deadline to March 31, 1994. On March 31, 1994, Plaintiffs' filed their Amended Complaint; service was finally effectuated on Conrail almost nine months after Plaintiffs received their 90-day Right to Sue Letter from the EEOC.

On July 17, 1996, due to Plaintiffs' failure for almost nine months to respond to Conrail's written discovery requests served in late 1995, Magistrate Judge Hurd ordered Plaintiffs to serve complete and satisfactory discovery responses. (*See* July 17, 1996 Order). As a result of Plaintiffs' failure to comply with Judge Hurd's July 17, 1996 Order, Conrail moved for Rule 37 sanctions. Conrail subsequently withdrew its motion for sanctions as Plaintiffs partially complied with the discovery requests and promised to appear for their depositions in August of 1996.

Although Plaintiffs commenced this action on September 23, 1993, Plaintiffs did not serve any discovery requests until the last week of October 1996. On November 19, 1996, Judge Hurd denied Plaintiffs' request for an extension of the discovery schedule because the discovery requests served by Plaintiffs sought discovery after the discovery cut-off, and after the Court had already extended the discovery deadline at the request of Plaintiffs. Discovery closed on October 30, 1996.

As is evident from the preceding procedural history, Plaintiffs have continuously flirted with, and sometimes violated, this Court's rules and scheduling orders. In addition, Plaintiffs did not respond to Conrail's State-

ment of Uncontested Facts as required by Local Rule 7.1(f). Local Rule 7.1(f) states:

> On a motion for summary judgment pursuant to Fed.R.Civ.P. 56, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue, with specific citations to the record where such facts are set forth. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue, with specific citations to the record where the factual issues arise. *All material facts set forth in the statement served by the moving party shall be deemed admitted unless controverted by the statement served by the opposing party.*

N.D.N.Y.L.R. 7.1(f) (emphasis added). Accordingly, all facts in Conrail's statement must be deemed admitted.

### B. The Claims

Plaintiffs' Complaint asserts a claim for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiffs also allege a cause of action in common law fraud based upon their allegation that Conrail submitted forged or altered performance appraisals and submitted inaccurate information to the EEOC in connection with the EEOC's investigation of Plaintiffs' charges.

Presently before the Court is Defendants' Motion for Summary Judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Furthermore, it is the substantive law that will determine what facts are material to the outcome of a case. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

Initially, the moving party has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994).

### B. ADEA Claim

■ Plaintiffs bring a claim for age discrimination under the ADEA. 29 U.S.C. § 621 *et seq.* Initially, the Court notes that although summary judgment is no longer a disfavored process for the elimination of groundless claims, *see Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552 (summary judgment favored to dispose of meritless claims), a district court should be wary of granting summary judgment in a discrimination case because the device is generally inappropriate where, as is typical, an employer's state of mind is relevant. *See Gallo,* 22 F.3d at 1224.

■ This is not to say that summary judgment is wholly inappropriate; rather, as the Second Circuit has noted, "the summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. [T]he purposes of summary judgment ... apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Considering the relative ease of bringing a suit alleging

discrimination and the difficulty and expense of defending against such a suit, courts correctly find summary judgment proper where allegations of discriminatory intent are merely conclusory. *See Meiri,* 759 F.2d at 998.

### i. Prima facie case under ADEA

■ Under the ADEA, an employer is prohibited from discharging an employee "because of [the employee's] age." 29 U.S.C. § 623(a)(1). However, an employer may lawfully discharge an employee based on reasonable factors other than age. *See* 29 U.S.C. § 623(f)(1). ADEA standards are modeled upon the prohibitions of Title VII of the Civil Rights Act. *See, e.g., McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995) ("The substantive, antidiscrimination provisions of the ADEA are modeled upon the prohibitions of Title VII.").

■ In the Second Circuit, ADEA cases are analyzed under the familiar framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case. *See, e.g., Promisel v. First American Artificial Flowers,* 943 F.2d 251, 259 (2d Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Under the standards originally articulated in *McDonnell Douglas,* when an employer initiates a reduction-in-force an employee has the initial burden of establishing a *prima facie* case of unlawful age discrimination by showing:

1) she belongs to the protected age group; 2) she was qualified to assume another position had it been available at the time she was discharged; 3) she was discharged; 4) and that the discharge occurred under circumstances suggesting that age was a factor.

*Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 110–11 (2d Cir.1992). Once a plaintiff has established a *prima facie* case, "the employer then has the burden of articulating a legitimate,

nondiscriminatory reason for its action.... The burden shifts back at that point to the plaintiff to prove that this reason is pretextual." *Promisel,* 943 F.2d at 259.

■ The Court will now examine each of the steps in the burden shifting analysis in order to determine whether Plaintiffs have put forth a viable cause of action. We must be mindful that regardless of how these burdens are described, Plaintiffs retain the ultimate burden of persuading the fact finder. *See Lopez v. Metropolitan Life Ins. Co.,* 930 F.2d 157, 161 (2d Cir.1991).

Here, there is no dispute that Plaintiffs have established the first element of their *prima facie* ADEA case. Deshais was 49 years old and Stieg was 47 years old when their positions were abolished; thus they clearly fall within the protected group under the ADEA, which includes all persons over the age of 40. 29 U.S.C. § 631(a). Furthermore, there is also no dispute as to the third element of their *prima facie* case—that Plaintiffs' were discharged from their supervisory positions.[1] The controversy here surrounds the remaining two elements, job qualification and inference of discrimination.

After examining the factual record, it appears that Plaintiffs have offered no evidence that they were "qualified to assume another position had it been available at the time [of their] discharge[]." *Gallo,* 22 F.3d at 1224. As Conrail's undisputed statement of facts demonstrates, Conrail had at least ten fewer positions for supervisors at its NCSC in Pittsburgh than the combined 73 positions in its six regional COCs. Plaintiffs were among the ten lowest scoring supervisors; thus, their positions were abolished.

Even if Plaintiffs are able to establish that they were qualified to assume another available position, they must still demonstrate that they were discharged under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas,* 411 U.S. at 792, 93 S.Ct. at 1819. As the Second Circuit recently noted, "[i]n a case such as the present one, where the plaintiff's evidence is en-

---

1. For purposes of this motion, Defendant concedes that Plaintiffs were discharged. (Def's

Mem. of Law at 13 n. 12).

tirely circumstantial, the pertinent question is whether plaintiff's main case contains evidence sufficient to permit the trier of fact to draw an inference that the prohibited motive was a substantial factor in the adverse employment decision." *Burger v. New York Institute of Technology,* 94 F.3d 830, 833 (2d Cir.1996). Furthermore, "[i]n cases involving a reduction in force, the inquiry is highly fact specific." *Burger,* 94 F.3d at 833.

Here, Plaintiffs argue an inference of discrimination can be drawn from the fact that Conrail's evaluation process was flawed. First, they assert that "Defendant's appraisal process which represented 50% of the rationalization ranking was riddled with forged signatures, scores altered by management and missing employee comments." (Pltfs' Mem. of Law at 11). Plaintiffs also state that the structured personal interview took less than one half-hour, and that one of Defendant's managers admitted that the process was subjective and at times age biased. (Pltfs' Mem. of Law at 11).

To support these assertions Plaintiffs rely exclusively on an affidavit from a former Conrail Employee, John Sanocki. (*See* Sanocki Aff., Conklin Aff., Exh. E). Sanocki states that he and other "Conrail workers perceived a negative atmosphere toward older employees by management." (Sanocki Aff. ¶ 2). In addition, Sanocki asserts that Conrail "Management wanted to dispose of Stieg and Deshais" and that Conrail arbitrarily changed employees' performance evaluations. (Sanocki Aff. ¶¶ 5–11).

However, an examination of John Sanocki's affidavit raises some important concerns. First, Mr. Sanocki does not state the basis of his knowledge concerning his assertions. Second, the affidavit generically identifies "Conrail management" without specifying any particular individuals. Third, Sanocki does not identify any decision-maker at Conrail who had a role in the decision to abolish Plaintiffs' positions. Finally, Sanocki does not connect Conrail's asserted "age animus" with the decision to abolish Plaintiffs' positions.

Nevertheless, in light of the fact that Plaintiffs' burden as this point is *de minimis,* the Court will assume that Plaintiffs have established a *prima facie* case of age discrimination. Consequently, if Conrail can articulate a legitimate, nondiscriminatory reason for its action, the burden will shift back to Plaintiffs to prove that this reason is pretextual. *See Promisel,* 943 F.2d at 259.

### ii. Non-discriminatory reason for termination

Establishment of the *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). In order to rebut this presumption, the employer has the burden of producing evidence that the employee was discharged for a legitimate, nondiscriminatory reason. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The defendant, however, "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (*citing Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978)). As the Supreme Court stated in *Texas Dep't of Community Affairs v. Burdine:*

> It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted.

*Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094–95. The strength of the defendant's rebuttal, to a large extent, depends on the strength or weakness of a plaintiff's *prima facie* case. *See Lieberman v. Gant,* 630 F.2d 60, 66–67 (2d Cir.1980) (noting relationship between the burden borne by the employee and the employer).

Here, Defendant states, and Plaintiffs do not contest, that in order to fully staff its new single NCSC Conrail no longer

need all 73 of the supervisors currently employed in the six COCs. Accordingly, Conrail implemented a plan to rank the 73 supervisors. (Def's Rule 7.1(f) Statement ¶ 10). The procedure involved a score based upon performance appraisals, a structured interview, supervisor's recommendation, and specific project/team activities. (O'Donnell Aff. ¶ 14). Plaintiff Deshais ranked 65th and plaintiff Stieg ranked 71st out of the 73 supervisors evaluated. (O'Donnell Aff. ¶ 16). It is also undisputed that after completing the evaluation process Conrail eliminated the positions of the 10 lowest ranking supervisors, including plaintiffs Deshais and Stieg.

Moreover, Conrail need only "articulat[e] some legitimate, nondiscriminatory reason" for the discharge. *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 295, 58 L.Ed.2d 216 (1978). In this circuit, "[i]t is enough for the defendants in the second phase of the case to bring forth evidence that they acted on a neutral basis. They do not have the burden of establishing that their basis was sound." *Lieberman*, 630 F.2d at 65. Furthermore, "courts must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process" *Meiri*, 759 F.2d at 995 (*citing Sweeney v. Research Foundation of State Univ. of N.Y.*, 711 F.2d 1179, 1187 n. 11 (2d Cir.1983)).

Even assuming that Plaintiffs' unsupported allegations are true, this Court finds that Conrail's decision to discharge Plaintiffs was based on legitimate nondiscriminatory reasons. Conrail has thus successfully rebutted the presumption of discrimination associated with Plaintiffs' *prima facie* case. The burden now falls back on Plaintiffs to show that the proffered reasons were mere pretext and that unlawful discrimination was the real reason for Conrail's action.

### iii. Pretext and Unlawful Discrimination.

■ If the employer has articulated a legitimate nondiscriminatory reason for the termination, the plaintiff must then present evidence establishing intentional discrimination. *See Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407

(1993). Furthermore, "[a]fter the employer articulates legitimate, non-discriminatory reasons for the employee's discharge, the employee must ... prove the existence of factual issues demonstrating that the stated reasons were merely a pretext for discrimination." *Meiri*, 759 F.2d at 997 (*citing Burdine*, 450 U.S. at 256–57, 101 S.Ct. at 1095).

■ On this issue, "the evidence as a whole ... must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by age animus ... Thus, the plaintiff cannot avert summary judgment if the record is devoid of adequate direct or circumstantial evidence of discriminatory animus on the part of the employer." *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 843 (1st Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). As the Supreme Court stated in *St. Mary's Honor Ctr. v. Hicks*, it is now incumbent on a plaintiff to prove, not only falsity of the proffered reasons given by the employer, but also that discriminatory motive was the true reason for their discharge. 509 U.S. 502, 519, 113 S.Ct. 2742, 2753, 125 L.Ed.2d 407 (1993).

■ From the evidence submitted here, there is nothing tending to show that Plaintiffs' discharge was due to reasons other than the fact that Conrail viewed Plaintiffs' performance rankings as insufficient. As Defendant's Local Rule 7.1(f) statement demonstrates, Conrail instituted a time consuming evaluation system to provide a ranking of the 73 supervisors. Because Plaintiffs' performance rankings placed them in the bottom ten supervisors their positions were abolished.

In opposition, and in support of their argument that Conrail's reasons were merely a pretext for discrimination, Plaintiffs do not offer one scintilla of direct evidence in support of their claim. Instead, Plaintiffs opposition consists entirely of an affidavit from a former Conrail Employee, John Sanocki. Sanocki states that he and other "Conrail workers *perceived* a negative atmosphere toward older employees by management." (Sanocki Aff. ¶ 2) (emphasis added). In addition, Sanocki asserts that Conrail "Management wanted to dispose of Stieg and

Deshais" and that Conrail arbitrarily changed employees' performance evaluations. (Sanocki Aff. ¶¶ 5–11).

However, a close examination of John Sanocki's affidavit reveals its deficiency. First, Mr. Sanocki does not state the basis of his knowledge concerning his assertions. Second, the affidavit generically identifies "Conrail management" without specifying any particular individuals. Third, Sanocki does not identify any decision-maker at Conrail who had a role in the decision to abolish Plaintiffs' positions. Finally, Sanocki does not connect Conrail's asserted "age animus" to Conrail's decision to abolish Plaintiffs' positions.

It is well settled that affidavits of persons without personal knowledge of the facts, inadmissible hearsay statements, and conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *See, e.g.,* Fed.R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356 (stating that conclusory affidavits are not sufficient to withstand summary judgment); *H. Sand & Co. v. Airtemp Corp.,* 934 F.2d 450, 454–55 (2d Cir.1991) (requiring personal knowledge); *Davis v. United Artists, Inc.,* 547 F.Supp. 722, 728 (S.D.N.Y. 1982) (disallowing multiple hearsay statements).

Moreover, even assuming that Sanocki has personal knowledge of every allegation in his affidavit, and assuming that his affidavit makes specific reference to individuals in Conrail management who had a role in the decision to abolish Plaintiffs' positions, Sanocki's affidavit nevertheless fails to state that Conrail's decision to discharge Plaintiffs was due to Plaintiffs' age. For this reason, the Sanocki affidavit fails raise a genuine issue of material fact as to Conrail's motive for discharging Plaintiffs.

Because Conrail has offered a legitimate nondiscriminatory reason for discharging Plaintiffs, the burden is squarely on Plaintiffs to show not only the falsity of the proffered reasons given by Conrail, but also that discriminatory motive was the true reason for Plaintiffs' discharge. *See St. Mary's Honor Ctr.,* 509 U.S. at 517–18, 113 S.Ct. at 2753. In other words, even if Conrail improperly altered Plaintiffs' performance appraisals this alone is not enough. Plaintiffs must still show that a *discriminatory motive* was behind their discharge. Perhaps Conrail management simply did not like Deshais and Stieg; this may be a lamentable reason to discharge them, but it does not rise to an ADEA violation. *See Burger,* 94 F.3d at 833. Consequently, Plaintiffs' conclusory allegations of age bias are not sufficient to oppose summary judgment.

On the other hand, Conrail's undisputed evidence supports the conclusion that Conrail's decision was unrelated to age. Of the 73 supervisors evaluated, only 9 were younger than forty on June 30, 1992, and Conrail retained fifteen supervisors who were older than plaintiff Deshais and twenty-two supervisors who were older than plaintiff Stieg. (Def's Rule 7.1(f) Statement ¶¶ 16, 21). Furthermore, three of the four oldest employees whose positions were abolished in the June 1992 workforce reduction were subsequently placed in nonagreement management positions equal to or higher in job level than their former positions. (Def's Rule 7.1(f) Statement ¶ 19).

After an examination of the entire record, there is nothing to indicate that Conrail's reason for discharging Plaintiffs was anything but truthful. Plaintiffs have submitted insufficient evidence to indicate that reasons other than what has been proffered by Conrail played a role in the decision process. Accordingly, Plaintiffs have not met their burden in showing that a triable issue of fact exists as to whether Conrail's proffered reasons for their discharge were merely pretext. And, for this reason, Plaintiffs' age discrimination claim must be dismissed.

## C. Common Law Fraud

Plaintiffs' second cause of action alleges that Conrail committed fraud in connection with the EEOC's investigation of Plaintiffs' charges of discrimination. Specifically, Plaintiffs allege that Conrail submitted performance appraisals with forged signatures and alterations to the EEOC and that Conrail represented to the EEOC that it would "rehire the aforesaid ten supervisors

who were laid off for the purpose of halting the investigation." (Amended Complaint at ¶ 34).

■ Under New York law, to recover for common law fraud a plaintiff must demonstrate that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 153 (2d Cir.1995); *see also Albert Apartment Corp. v. Corbo Co.*, 182 A.D.2d 500, 582 N.Y.S.2d 409 (1st Dep't 1992).

Addressing the first prong of Plaintiffs' fraud claim, Conrail avers that it did not submit any performance appraisals, let alone altered performance appraisals, to the EEOC in response to the EEOC's investigation. In fact, Plaintiffs themselves admit that they do not know if any performance appraisals were submitted by Conrail to the EEOC. For example, in Stieg's deposition he states:

Q. Do you know if Conrail ever submitted [a performance appraisal?]

A. I have no idea what Conrail did.

(Stieg Dep. at 43). Later in his deposition plaintiff Stieg again states:

Q ... I'm asking you whether or not the documents which are the appraisals which were performed on you in the course of your employment at Conrail were delivered to EEOC as alleged....

A. Well, I don't know what Conrail delivered to the EEOC.

(Stieg Dep. at 225).

Evidently as a result of Plaintiffs' lack of knowledge concerning Conrail's submissions to the EEOC, Plaintiffs made a Freedom of Information Act request to the EEOC. In response to Conrail's request for production of documents, Plaintiffs produced the complete files they received from the EEOC. Those files were marked as Deposition Exhibits 16 (Deshais) and 17 (Stieg) at their respective depositions. Neither of the exhibits contain a single performance appraisal form. When asked if he knew if Conrail submitted any other documents, Deshais answered:

Q. ... [Y]ou have no personal knowledge of what documents Conrail submitted to the EEOC other than what you see in the file here; is that correct?

A. Right. Yes.

(Deshais Dep. at 38–39).

Turning to Plaintiffs' second allegation of fraudulent conduct, Plaintiffs allege that Conrail represented to the EEOC that it would "rehire the aforesaid ten supervisors who were laid off for the purpose of halting the investigation." (Amended Complaint at ¶ 34). However, Plaintiffs do not identify who at Conrail made the alleged misrepresentation regarding "rehiring," they do not identify to whom the alleged representation was made at the EEOC, they do not state whether the statement was oral or written, and they do not provide a date on which the alleged misrepresentation was made. Furthermore, the Court notes that the EEOC did not halt its investigation, but proceeded to issue a finding of no cause.

■ Plaintiffs' allegations of fraud are deficient in at least two respects. First, Plaintiffs have not demonstrated that a genuine issue of facts exists as to whether Conrail made a material false representation by submitting altered performance appraisals to the EEOC. *See Banque Arabe et Internationale D'Investissement*, 57 F.3d at 153. Second, Plaintiffs' vague allegations of Conrail's purported promise to "rehire" do not meet the minimum pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 9(b) ("the circumstances constituting fraud or mistake shall be stated with particularity"); *see also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987) (stating that "[f]raud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations").

Accordingly, Plaintiffs' fraud claim must also be dismissed.

## III. CONCLUSION

In summary, no genuine issue of material fact exists as to whether Plaintiffs can prove

age discrimination in violation of the Age Discrimination in Employment Act. In addition, summary judgment is appropriate as to Plaintiffs' claim that Conrail committed fraud in its dealings with the EEOC.

Therefore, the Complaint is dismissed in its entirety. Defendant's Motion for Summary Judgment is hereby GRANTED.

**IT IS SO ORDERED**